TIMOTHY M. BURGESS
United States Attorney

JAMES A. GOEKE
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
(907) 271-5071

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 NOV 28 PM 4:20

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | K05-0003 CR (JWS) |
| ) | |
| Plaintiff, ) | **UNITED STATES'** |
| ) | **MOTION TO CHANGE** |
| vs. ) | **PLACE OF JURY TRIAL** |
| ) | **TO ANCHORAGE** |
| TOMMY HANSON, ) | |
| ) | |
| Defendant. ) | **Filed on Shortened Time** |
| _____ ) | |

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and moves on shortened time[1] to

---

[1] This motion is filed on shortened time to allow the Court and parties sufficient time to adjust any necessary arrangements for an Anchorage trial in the event the Court grants the motion to change the trial location.

1

change the place of the jury trial in this matter to Anchorage, Alaska. Trial is currently set for December 12, 2005 in Ketchikan, Alaska. Changing the trial location in this matter from Ketchikan to Anchorage is essential to the appropriate presentation of the evidence in this child pornography case, will conserve scarce resources for the Court, the United States Marshal, and both parties, and will promote judicial economy. Chaning the place of trial also will not prejudice the defendant.

## I. GENERAL STANDARDS REGARDING VENUE AND VICINAGE

### A. Venue

Rule 18 of the Federal Rules of Criminal Procedure provides:

*Rule 18. Place of Prosecution and Trial*

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Venue within the District of Alaska is apparently conceded by the Defendant and is alleged in the First Superseding Indictment.

**B.     Vicinage**

Article III of the Constitution provides that criminal trials "shall be held in the State where the said Crimes shall have been committed...." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment provides that criminal defendants have the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed...." To that end, the United States Supreme Court has articulated that the "basic policy of the Sixth Amendment" is best served by holding trial where "[t]he witnesses and relevant circumstances surrounding the contested issues" are located." Travis v. United States, 364 U.S. 631, 640, 81 S.Ct. 358, 364 5 L.Ed.2d 340(1961). A primary purpose of the doctrine is to avoid unfairness by prosecuting defendants in remote places. See, e.g., United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873(1958).

The situs of a crime is generally defined to be where the criminal act occurred. Johnson v. United States, 351 U.S. 215, 76 S.Ct. 739, 100 LEd.1097 (1956). The indictment in this case charges crimes arising from acts that ocurred in Alaska. In matters such as this, a motion for an intra-district transfer from one location within the district to another, the Fifth Circuit has held "the trial court must balance the statutory factors of the convenience of the defendant, the witnesses and the prompt administration of justice." United States v. Faulkner, 17

3

F.3d 745, 756 (5th Cir.)(Rehearing and suggestion for rehearing *en banc* denied April 29, 1994), (quoting, United States v. Dickie, 775 F.2d 605, 610 (5th Cir. 1985)).  Indeed, in Faulkner, the Fifth Circuit expressly found that while venue is generally a constitutional concern, the location for trial within a particular district does not rate constitutional protection.  In determining whether to transfer a trial from El Paso to Midland, Texas, the court of appeals stated:

> [T]he error, if any, in transferring the case from El Paso to Midland does not rise to the level of plain error.  While we agree that venue generally is a constitutional concern, and that "errors of constitutional magnitude will be noticed more freely under the plain error rule than less serious errors," <u>we find it equally clear that the place assigned for trial within a judicial district is not a matter of constitutional dimension.</u>

Faulkner, 17 F.3d at 757, (emphasis added), (quoting, United States v. Brown, 555 F.2d 407, 420 (5th Cir. 1977), cert. denied, 435 U.S. 904, 98 S. Ct. 1448, 55 L.Ed.2d 494 (1978)).

In so ruling, the Faulkner panel referred to the following line of authorities which establish that vicinage lies within the ***district*** where the offense occurred, not a particular intra-district location.  See United States v. Alvarado, 647 F.2d 537, 539 (5th Cir. 1981), ("In criminal actions, the constitutional unit of venue is the district, not the division."); United States v. James, 528 F.2d 999, 1021 (5th

Cir.), ("The venue provision of the Sixth Amendment provides only for trial in the district where the crime shall have been committed. There is no reference to a division within a judicial district."), cert. denied, 429 U.S. 959, 97 S. Ct. 382, 50 L.Ed.2d 326 (1976). As the foregoing authorities establish, there is no constitutional right to a trial by jury based on intra-district vicinage. As such, it is well within the Court's sound discretion to change the location of the instant trial from Ketchikan to Anchorage.

**II.    A JURY TRIAL IN ANCHORAGE WILL ALLOW PROPER PRESENTATION OF THE SENSITIVE EVIDENCE IN THIS CASE, WILL CONSERVE RESOURCES, AND WILL PROMOTE JUDICIAL ECONOMY.**

   **A.    Trial in Anchorage Allows Proper Presentation of the Sensitive and Graphic Child Pornography Images at Issue.**

As the Court is aware, this case concerns charges that the defendant possessed child pornography (Count 1 and Count 2) and that the defendant received child pornography over the internet (Count 3). As set forth in the First Superseding Indictment, the images of child pornography at issue exist in an electronic format on various computer hard drives and computer media and take the form of still images and video clips. Necessarily, the United States must present this evidence to the jury. The images and video clips the government will

present at trial by definition involve graphic and disturbing images of minor children, some as young as toddlers, presented in a sexually explicit manner.[2]

As such, the United States must exercise extreme care to present this extremely sensitive and graphic evidence as carefully as possible to minimize the re-victimization of the minors at issue and to limit any reproduction of the images. A trial in Anchorage is essential to achieve these important goals. The courtroom facility in Ketchikan simply has no provision for presenting the type of electronic evidence at issue in this case to the jury, the attorneys, witnesses, or the Court. Nor does the courtroom in Ketchikan allow such evidence to be presented in such a way as to avoid any people besides those necessary for the conduct of the trial from viewing the images. By contrast, the courtrooms available in Anchorage are properly equipped to easily present such electronic images to the jury, the attorneys, witnesses, and the Court. Moreover, the Anchorage courtrooms allow such evidence to be presented in such a way that only those who must view the images are able. This prevents any unnecessary revictimization of the minors in the images by limiting the exposure of the images to only essential people. On

---

[2] This case involves thousands of images and video clips and the government necessarily will present only a representative sample of the images it believes to be child pornography.

information and belief, the trial in this matter is the first child pornography case to proceed to trial in this district.

### B. A Trial in Anchorage is Essential for the Security of the Defendant.

A trial in Anchorage would also alleviate a significant staffing and security burden for the United States Marshal that would not be at issue in Anchorage. On information and belief, there are no Deputy United States Marshals stationed in Ketchikan. There is also no holding cell or other secure facility available in the Ketchikan Federal Courthouse for the protection and care of the defendant. Accordingly, the Deputy United States Marshals assigned to transport and guard the defendant will face added security and staffing problems in providing the defendant access to lavatory facilities and other services and in keeping the defendnat separate from witnesses and other trial participants. These concerns do not exist in Anchorage. Moreover, during any trial in Ketchikan, the United States Marshal will necessarily be without the assistance in Anchorage of any deputies temporarily assigned in Ketchikan.

### C. A Trial in Anchorage Allows All of the Evidence to Remain Secure in Anchorage.

In addition to trial participants and witnesses, all of the evidence seized as part of this case is also in Anchorage. All of the various computers, computer

7

hard drives, computer peripherials, and computer media, almost all containing images the government considers child pornography and thus contraband, is in Anchorage. A trial in Ketchikan would require moving and resecuring all of this evidentiary material. A trial in Anchorage allows this sensitive and explicit evidence to remain as secure as possible.

### D. A Trial in Anchorage is Important for Efficiency and Judicial Economy.

A trial in Anchorage is most efficient and econonical for all non-witness participants in the trial. All of the non-witness participants in the trial reside in Anchorage. The defendant is presently in the custody of the United States Marshal and is currently physically located in Anchorage. The Court and the Court's staff are located in Anchorage. The undersigned Assistant United States Attorney and all necessary government support staff are located in Anchorage. The defendant's counsel, Assistant Federal Defender Michael Dieni, is located in Anchorage as well as all investigators and other support staff employed by the Federal Defender's Office. All available Deputy United States Marshals are located in Anchorage. Accordingly, all non-witness trial participants must travel to Ketchikan at significant expense.

A trial in Anchorage is also most efficient and economical for most anticipated witnesses at trial. In addition to the non-witness trial participants, most government witnesses are located either in Anchorage or outside the state altogether. At this time, on information and belief, the government anticipates calling seven to ten witnesses and anticipates that only one of those potential witnesses actually resides in Ketchikan. One or two other potential witnesses, both police officers, reside in Craig. The remaining government witnesses, including the government's case agent, reside in Anchorage or reside outside the state.[3] For the out of state witnesses, the government anticipates that travel to Anchorage would be less expensive and less time consuming than travel to Ketchikan. As for defense witnesses, the government is unaware of any witnesses the defendant anticipates calling that reside in Ketchikan. As previously noted, the defendant is currently in custody in Anchorage. During the recent suppression hearing in Ketchikan during October, the defendant did not call any witnesses aside from himself. Accordingly, if the trial is held in Anchorage, the government would avoid or reduce travel expenses for the majority of its witnesses as well as for the defendant.

---

[3] One government agent, FBI Special Agent Mary Beth Kepner, resides in Juneau, but on information and belief, is currently scheduled to be in Anchorage, Alaska during the week of December 12, 2005 for other matters.

Judicial economy would also be served with a trial in Anchorage with regard to the conduct of trial and selecting and enpaneling a jury. Lodging a jury during the winter Holiday months will also likely be much easier in Anchorage over Ketchikan. On information and belief, there is significantly more lodging available in Anchorage. Travel difficulties during the winter also tend to be less severe in southcentral Alaska during winter than in southeast Alaska. As the Court is aware, during the suppression hearing in Ketchikan, two government witnesses were unable to travel within southeast Alaska due to weather problems and instead were forced to testify telephonically. Many prospective jurors for an Anchorage trial would likely either reside in the greater Anchorage area, the Mat-Su Valley, or the Kenai Penninsula, areas all accessible by the road system.

Finally, it is important to note that the defendant was previously on pretrial release. However, after various violations of the conditions of his pretrial release, his release was revoked and he was returned to the custody of the United States Marshal. Accordingly, any contention that the defendant would be prejudiced by not holding trial closer to his home must be considered against this context. Much of the added expense entailed by a trial in Anchorage through the added necessity of additional staffing from the United States Marshal is a direct result of the

defendant's own actions. He should not now be heard to complain about the consequences of his actions.

### III. CONCLUSION

As set forth above, a trial in Anchorage will allow the sensitive and explicit evidence in this case to be presented in an appropriate way. A trial in Anchorage also addresses the significant security concern created by moving the defendant, who is in custody, to Ketchikan. Finally, a trial in Anchorage avoids the expense of transporting the defendant, the Court and the Court's staff, the Deputy United States Marshals necessary to guard the defendant, all of the attorneys and their support staff, all of the evidence, and most of the witnesses from Anchorage to Ketchikan. Accordingly, for the reasons set forth above, the Court should grant the United States' Motion to Change Place of Jury Trial to Anchorage.

RESPECTFULLY SUBMITTED this 28th day of November 2005, in Anchorage, Alaska.

TIMOTHY M. BURGESS
United States Attorney

JAMES A. GOEKE
Assistant U.S. Attorney

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel of record on November 28, 2005, via:

    ( X ) Placed in FPDO Box at Front Desk

Michael Dieni
Federal Defenders Office
550 West 7th Avenue Suite 1600
Anchorage, Alaska 99513

Executed at Anchorage, Alaska, on November 28, 2005.

_____
Legal Assistant
U.S. Attorney's Office