Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TOMMY S. HANSON,<br><br>　　　　　Defendant. | Case No. 5:05-cr-0003-JWS<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

　　　　Defendant, Tommy S. Hanson, by and through counsel Michael Dieni, Assistant Federal Defender, submits his sentencing memorandum for sentencing now set for May 11, 2006.

　　　　A.　　Introduction

　　　　The factors set forth in 18 U.S.C. § 3553(a) warrant a sentence at the low end of the statutory range for this offense.  Based upon his actual performance as a member of the Prince of Wales community, Mr. Hanson is not a danger.  The information from citizens who know him, attached to this brief and to be presented at sentencing, will establish that he is well respected.  People who know him are largely unaffected by this

offense. The distinction to be drawn in the brief that follows is this – the people in far flung corners of hard-bitten Alaska judge their neighbors by deeds and their willingness to apply the golden rule. The dark and private crevices of sexual fantasy life, a life Mr. Hanson never ever intended to be published in the manner that has occurred in this case, should have little or no bearing upon the ultimate judgment of the man. Under those circumstances, when compared to the kind of person Tommy Hanson has proved himself to be to others around him, a relatively small sentence is appropriate.

The offense here, magnified as it is by the volume of material, is much more a reflection of the power of the internet and the power of modern day computers, and Mr. Hanson's interest in computers and ability to use them, than a reflection of Mr. Hanson as a person.

   B. *Statutory Framework Allows For Probation or a Fine as an Alternative to Imprisonment*

The statute which created the crime for which Mr. Hanson is convicted provides for probation as an alternative to imprisonment. The offense to which Mr. Hanson pleaded guilty is Count 2, which alleges simple possession of child pornography, a violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). This offense is a Class C felony. PSR ¶ 87. The court is authorized to sentence Mr. Hanson to a term of probation. 18 U.S.C. § 3561(a). The statute which created this offense also authorizes the court to simply impose a fine, not more than $10,000, without either probation or imprisonment. If the court finds it necessary, however, the court may sentence Mr. Hanson to a term of imprisonment. 18 U.S.C. § 2252(b)(2).

This court is no doubt aware of the broad ramifications of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), for this proceeding. Even if no formal downward departure can be specifically found, the sentencing guideline range is no longer binding on the court. It is only one of five factors to be considered in determining the sentence. *Booker*, 125 S. Ct. at 764-65. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentence available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. *Id.*; 18 U.S.C. §§ 3553(a)(1), (a)(3), (a)(6)-(7).

In considering the § 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. *See United States v. Jaber*, 362 F. Supp. 2d 365, 370-76 (D. Mass. 2005) (providing comprehensive analysis of why sentencing guidelines do not reflect statutory purposes of punishment); *United States v. Ranum*, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005) (same). Perhaps even more important, however, is that the *Booker* decision establishes a new, independent limit on the sentence that may be imposed.

The primary sentencing mandate of § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, incapacitation, and rehabilitation: The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]. 18 U.S.C. § 3553(a). This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the court is *statutorily prohibited* from sentencing – even when a greater sentence is recommended

by the sentencing guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

    C.    *The Offense*

The PSR accurately describes the offense. Mr. Hanson possessed a large volume of pornography, and mixed into it was a large volume of child pornography.

It is important to keep the offense within a proper perspective. Mr. Hanson possessed the material on computer media in the privacy of his home. It was never published to anyone. Nor did he intend for it to be published to anyone. A house-sitter accidently found it when Mr. Hanson was away. The worst aspect of this case from Mr. Hanson's perspective is the publication of this material. Mr. Hanson is deeply embarrassed.

In assessing the severity of the offense, therefore, it is crucial that the court acknowledge and take into account the following undisputed facts:

1. Mr. Hanson has no history of child molestation or allegations of such conduct;

2. There is nothing – no picture, no emails, no chats – nothing on the several hard drives and other media in his possession even suggesting that Mr. Hanson expressed any interest in molesting or harming a child. In fact, he possessed a huge volume of personal photos, digitally stored on his computer, taken by himself, and none of that photography demonstrates any particular interest in children.

3. Mr. Hanson's possession of the material was a purely private matter. There is no evidence – no emails, no chats, no correspondence –

> suggesting that he communicated with anyone about the possession of the material.

4. There is no evidence that anyone benefitted financially from Mr. Hanson's possession of the material, or that there was any underlying commercial purpose underlying his offense. He apparently got it all free, through random downloading from internet newsgroups, using a program on his computer that automatically collected and stored the material.

The chief factor against Mr. Hanson is the volume of material. In a way, the volume possessed is almost absurd, because he would have never had the time to actually even view it. Using the NBPro program, Mr. Hanson's computer collected and stored the material without him being present. He used this method because he had only a dial up modem, and downloading pictures, legal or not, could not easily be done with a dial up modem. This does not inherently diminish his guilt in this matter. However, Mr. Hanson wishes the court to not misinterpret the volume as part of some over-arching plan to do something other than what has been alleged – that he possessed child pornography.

   D.   *Mr. Hanson*

The incarceration of Tommy Hanson has cost the people of Prince of Wales Island one of it well-respected citizens. The attached community letter adequately summarizes the feelings of those who know Tommy Hanson, the person, in his deeds and his actions. Exhibit A. In the letter, signed by 30 individuals, Mr. Hanson is described as a "friendly, responsible, honest and reliable person." The community letter acknowledges

that Tommy Hanson needs help, describing him as "good-hearted" and urges the court "to see him helped in the best way possible."

Mr. Hanson's history, though unique to him, is not remarkable. He has been a hard-working, self sustaining individual over the more than 33 years he has resided in Southeast Alaska. He has commercially fished, and, more recently, subsistence fished. He has been in several adult relationships over the years that ended in divorce or break-up. In recent years, he has forged relationships with significant others over seas in Russia and the Ukraine. Evidence from his computer records showed that these were ordinary adult relationships, and that Mr. Hanson made significant efforts to get one of these individuals over from the Ukraine to Alaska to get married. These charges have temporarily ruined that situation.

There can be little doubt but that Mr. Hanson has some sort of mental health problems. The PSR shows that he has suffered from episodic historic problems with alcohol and marijuana, though there is no evidence that alcoholism or drug dependency played a role in the offense. Mr. Hanson has had relatively minor scrapes with the law. With only one criminal history point, however, the sentencing guidelines correctly adjudge him to be treatable as a category I, to be sentenced as if he were nearly a first offender.

The letters that are attached repeat a theme regarding Mr. Hanson – that he would not hurt anyone, including a child. Exhibits B, C, D, E, F, G, H. Some of the writers keenly and correctly conclude that Mr. Hanson suffers from unresolved and long term depression. Exhibit B and E. The bottom line with Tommy Hanson, in the view of those who have lived with him and seen him on a day-to-day basis over the course more than 30 years, is that he is fundamentally a good and honorable person. He has good

intentions for those around him, and that he would not hurt anyone and he would not molest a child. Exhibits C, D.

### E. Sentencing Guidelines

The sentencing guidelines for this area seem inconsistent with the authorizing statute. U.S.S.G. 2G2.2. While the statute authorizes a fine, or probation, as an alternative to imprisonment, the guidelines strictly applied would *always* require incarceration. For example, a defendant with no criminal history possessing one picture, not subject to any enhancements, starts at offense level 18. (*Id.*) After a trial, this person would get a recommended sentence of 27 to 33 months. If that person admitted guilt, and got 3 levels off for acceptance of responsibility, the recommended guideline range would a minimum of 18 months of prison time.

The guidelines rate Mr. Hanson a category I offender, and, through a variety of enhancements, arguably increase his offense level 13 levels from the standard 18 to 31.

| | |
|---|---|
| Base offense level............................................. | 18 |
| Use of computer............................................. | +2 |
| Under age 12................................................. | +2 |
| Sado-masochism/violence ............................. | +4 |
| More than 600 images.................................... | +5 |
| Total | 31 |

A large sentencing increase from the base offense level of the guideline computation must be built upon evidence of at least clear and convincing, if not beyond a reasonable doubt. *United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001) (due process

requires that nine-level sentencing enhancement must be proved by clear and convincing evidence); *United States v. Hopper,* 177 F.3d 824, 832 (9th Cir. 1999) (due process requires that seven level increase the result of two separate sentencing enhancements – three for official victim and four for violent conduct – must be proven by clear and convincing evidence).

Mr. Hanson's first objection to the guidelines as the dominant basis for a sentence is that the enhancements tend to overlap and also cause a significant increases for what has become quite ordinary, normative conduct. For example, the guidelines add two levels for use of a computer. This provision has been a standard feature of the guidelines since the beginning, in 1987, at a time before the internet and before the Microsoft revolution made computers a standard aspect of every day life. Possession of child pornography by any other means has become *extraordinary*.

Second, the guidelines add two levels for images of child pornography under 12 years of age, and, at the same time, the PSR proposes an additional 4 levels under the sado-masochistic enhancement because some of sexual activity depicted, if real, would have involved children under age 10 who allegedly, necessarily, would have suffered physical and emotional pain in the process. Because each enhancement can be defined in a way that does not necessarily duplicate all of the others, double jeopardy is not implicated. However, in the real workings of the enhancement, the overlapping nature of the enhancement leads to a piling on of a form of double punishment.

Mr. Hanson formally objects to the four level increase in the sentencing guideline computation proposed in the PSR at ¶ 33 where it is asserted that Mr. Hanson possessed images that depicted sado-masochism or violence against children. U.S.S.G.

2G2.2(b)(4). The PSR correctly observes that Mr. Hanson possessed pictures that appear to show penile penetration of an adult with a person under ten years of age. The error here is presuming that the guideline is met because, from a medical standpoint, the conduct would likely have or necessarily involved pain.

Mr. Hanson's objections are as follows. First, the guideline should be read literally, not as an abstraction about the potential for pain in any particular sexual act. The picture must be overtly done for the purpose of depicting the conjunction of violence and sex to qualify as violent or sado-masochistic. In truth, all adult-child sexual relations can aptly be described as doing emotional and physical violence to a child. That fact cannot be the basis for a four level increase. That fact is inherent in the high base offense level (18) already set forth for the offense. Second, Mr. Hanson does not know, and does not concede, that the images are real (versus photographically staged or manipulated) and truly depict real children.

### F.   Concluding Argument

Even if the court were to conclude that Mr. Hanson's case is correctly calculated under the guidelines at a range of 87 to 108 months, the court has a solid basis in fact and law for imposing a substantially smaller sentence. The statute authorizing punishment allows for probation. The statute directing the sentencing inquiry directs the court to take into account the whole of the man, not just an arithmetic exercise set forth in the sentencing guideline offense assessment. At the end, the court can consider Mr. Hanson's apparent harmlessness, and his documented positive contributions to the community, and his need for counseling for depression, into deciding a sentence that is appropriate and not greater than necessary.

The law supports leniency for individuals who have unresolved mental health problems. *Karis v. Calderon,* 283 F.3d 1117, 1134 (9th Cir. 2002) (there is a belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems, may be less culpable than defendants who have no such excuse); *United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993) (the criminal justice system has long meted out lower sentences to persons who, although not technically insane, are not in full command of their actions); *United States v. Lewinson*, 988 F.2d 1005 (9th Cir. 1993) (affirmed downward departure in fraud case where drug use related to mental illness, though mental illness not severe and did not affect defendant's ability to perceive reality).

Here, Mr. Hanson, and the community around him, is better served by a sentence that takes into account an out of prison counseling program to dealing with mental health issues.

This case is a tragedy, because the court is called upon to sentence a man for the fantasies of his mind, that were fueled by probable unresolved long-term mental health issues and the ready accessibility of the internet. The privacy maintained by Mr. Hanson in the manner in which he obtained the material, and the manner in which he held it, supports the conclusion that he meant nothing other than to achieve this offense *in his mind*. His act, in effect, comes very close to "thought crime." The suppression of child pornography is the first goal of punishment, and Mr. Hanson anticipates some sort of jail sentence. The question of how much imprisonment, however, needs to be

moderated by the potential for Mr. Hanson's rehabilitation outside of jail, and the positive contributions he has made in his community.

DATED this 4th day of May, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on May 4, 2006, a copy of the foregoing document, with attachments, was served electronically on:

James Goeke, Esq.

/s/ Michael D. Dieni