DEBORAH M. SMITH
Acting United States Attorney

JAMES A. GOEKE
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: james.goeke@usdoj.gov

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 5:05-cr-00003-JWS |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **SENTENCING** |
| vs. | ) | **MEMORANDUM** |
| | ) | |
| TOMMY HANSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by and through the undersigned Assistant U.S. Attorney, and submits this Sentencing Memorandum:

### SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** . . . . . . . . . . . . . . . . . **100 MONTHS**

**SUPERVISED RELEASE** . . . . . . . . . . . . . . . . . . . . . . . . **3 YEARS**

**FINE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$15,000.00**

**SPECIAL ASSESSMENT** . . . . . . . . . . . . . . . . . . . . . . . . **$100.00**

The United States Probation Office has prepared a Presentence Investigation Report ("PSR") in this case. The United States agrees with the factual findings of the PSR.

## I.     BACKGROUND

### A.     <u>The Crime.</u>

Prior to his arrest in this case, the defendant resided alone in a mobile home trailer at 308 Shaan Seet, Craig, Alaska. During February 2005, while the defendant was in the Ukraine, the defendant allowed a friend to stay in his residence. On February 12, 2005, while staying at the defendant's residence, the friend discovered images of child pornography on the defendant's computer. The friend contacted Craig Police Officer Chris Villers and advised him of her discovery. The friend showed Officer Villers two images on the defendant's computer of minor children posed nude and exposing their genitalia.

Based on Officer Villers' observation of the pornographic images on the defendant's computer, Sargent Habib and Officer Villers obtained a search warrant for the defendant's residence to search for child pornography and seize computer

equipment and related computer media (such as CD-ROM discs, DVD discs, and

ther media).  While executing the search warrant, officers discovered an additional

computer system in the residence and secured a second search warrant for that

system.  Pursuant to the two search warrants, officers seized an enormous amount

of material including computer hardware and computer media containing

thousands of images of child pornography in the form of still digital images and

moving digital images.

 After execution of the two state search warrants, the Craig Police

Department contacted agents of United States Immigration and Customs

Enforcement ("ICE") to investigate suspected violations of federal child

pornography laws.  On February 25, 2005, ICE agents obtained a federal search

warrant authorizing another search of the defendant's residence.  The federal

search warrant was based on the investigative findings of the Craig Police

Department, including the discovery of numerous images of child pornography on

the defendant's computer and on various electronic media, including CD-ROM

discs.  Pursuant to the federal search warrant, ICE agents took possession of the

evidence seized by the Craig Police Department at the defendant's residence on

February 12, 2005.

On April 19, 2005, the federal Grand Jury for the District of Alaska returned a three count indictment against the defendant alleging three counts of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).  On May 18, 2005, Officer Villers and Special Agent Mary Beth Kepner of the Federal Bureau of Investigation ("FBI") arrested the defendant outside his residence at 308 Shaan Seet pursuant to a federal arrest warrant.

At the time of his arrest, the defendant spoke to Officer Villers and Special Agent Kepner at his residence.  The defendant made various incriminating statements to Officer Villers and Special Agent Kepner about his use of the internet and his characterization of the pornographic material he downloaded from the internet.  Among other things, the defendant stated that at his computer was connected to the internet and that at the time of his arrest he had actually been downloading images from two newsgroups, alt.binarypictures.hussie and alt.binarynudism.  The defendant characterized the images he downloaded from the internet as nudism and admitted that he downloaded pictures of nude underage girls and nude adult women.  The defendant stated that he transferred images from his computer hard drive to CD-ROM discs to open up storage space on his computer hard drive.  The defendant admitted that he had been transferring images from his hard drive to CD-ROM discs for several years.  The defendant stated that

no one else besides him had used his computer from March 11, 2005 through to his arrest on May 18, 2005.

During the course of the defendant's statements, Officer Villers noticed yet another computer system in the defendant's residence. This computer system had not been present during the earlier searches of the residence. Officer Villers asked the defendant permission to look at the computer. The computer was turned on and a screen saver was engaged. The defendant assented to Officer Viller's request. Officer Villers moved the computer mouse to disengage the screen saver. Once the screen saver was disengaged, Officer Villers and Special Agent Kepner observed two images of child pornography that appeared to be downloading to the defendant's computer system  from the internet at that moment. As Officer Villers and Special Agent Kepner continued speaking with the defendant, additional images continued to download to the computer system from the internet. At that point, Special Agent Kepner seized the computer system because the system contained contraband child pornography in plain view. SA Kepner later obtained a federal search warrant to search the computer system for child pornography.

All of the evidence in this case was examined by SSA Laws. SSA Laws is a certified forensic computer examiner. SSA Laws identified thousands of images of child pornography from various computer hard drives and computer media (such as

CD-ROM discs and DVD discs) seized from the defendant's residence in February and May 2005.  The defendant moved to suppress all of the evidence seized from his residence.  The motion was denied.  The defendant also moved to suppress all of his statements to law enforcement officers.  The motion was denied.

### B.    Procedural History.

On November 17, 2005, the Grand Jury returned the First Superseding Indictment against the defendant.  The First Superseding Indictment alleged three counts against the defendant concerning the possession and receipt of child pornography.  Count One charged the defendant with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), Count Two charged the defendant with possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), and Count Three charged the defendant with the receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

On December 12, 2005 the defendant appeared for trial.  Prior to jury selection, the Court dismissed Count One and Count Three as unconstitutional based on the reasoning in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).  The defendant then pled guilty to Count Two of the First Superseding Indictment.

## II.    SENTENCING GUIDELINES CALCULATION

## A.     The PSR is Accurate.

The United States agrees with the factual findings and calculations in the PSR and agrees that the defendant's criminal history category is I.  The United States also agrees that the defendant's adjusted offense level is 29 and that the defendant faces a sentencing range of 87 to 108 months imprisonment.  **The United States recommends a sentence of 100 months imprisonment, three years of supervised release, a fine of $15,000, and a $100 special assessment.**

A sentence of 100 months imprisonment, coupled with a full three years of supervised release, is appropriate given the nature and circumstances of the offense and the history and characteristics of the defendant.  Such a sentence reflects the seriousness of the offense, affords deterrence to future criminal conduct, and protects the public.

The defendant has an apparent insatiable appetite for child pornography and continued to download child pornography from the internet even after police had seized multiple computers and other media containing child pornography from his residence.  Moreover, the nature of the images the defendant collected are particularly disturbing, covering nearly the entire spectrum of child pornography, from posed images of young children displaying their genitalia, to graphic images of children engaged in sex acts, to particularly disturbing images of children as

young as infants being sexually abused by adults.  In short, the defendant could not have been mistaken as to the nature of the images he possessed and instead chose to collect some of the most disturbing types of child pornography images available on the internet.

The maximum term of three years of supervised release is a particularly important component of the sentence and is essential to ensure that when the defendant re-enters society, he does so while affording maximum protection to the public.  To that end, the United States has reviewed and fully agrees with the U.S. Probation Officer's Recommendations for Special Conditions of Supervision and requests that the Court incorporate those conditions as part of the defendant's term of supervised release.   The defendant's apparent insatiable interest in child pornography poses a serious risk to society and requires additional conditions of supervision to protect society and to facilitate the defendant's successful transition from a custodial setting.

**B.      The Four Point Enhancement Pursuant to U.S.S.G. § 2G2.2(b)(4) for Images of Sadistic, Masochistic, and Violent Conduct is Appropriate.**

The only material objection raised by the defendant is his contention that multiple images of an adult male penetrating a crying prepubescent female child

somehow does not constitute an act of violence pursuant to U.S.S.G.

§ 2G2.2(b)(4).[1]  Section 2G2.2(b)(4) provides:

> If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels.

Numerous circuits have held that the similar images depicting the aforementioned conduct may constitute acts of sadism and violence for the purposes of the four point enhancement provided in U.S.S.G. § 2G2.2(b)(4).  See United States v. Myers, 355 F.3d 1040, 1044 (7th Cir. 2004) (holding that sadistic conduct includes conduct likely to cause pain in young children such as the penetration by an adult male of a young girl between the age of 5 and 8); United States v. Kimler, 335 F.3d 1132, 1143 (10th Cir. 2003) (holding that enhancement for sadistic or masochistic conduct is appropriate for images depicting adult males engaged in vaginal or anal intercourse with prepubescent minors as such images portray infliction of pain and humiliation on young victims for sexual gratification); United States v. Hall, 312 F.3d 1250, 1262 (11th Cir. 2002) (holding that images of prepubescent girls being penetrated by adult males necessarily involves pain); United States v. Lyckman, 235 F.3d 234, 240 (5th Cir. 2000)

---

[1] Current U.S.S.G. § 2G2.2(b)(4) was formerly numbered as U.S.S.G. § 2G2.2(b)(3) and is so referenced in older cases.

(noting depiction of a sexual act involving penetration of a young child by an adult male is likely to cause pain and injury sufficient to qualify as sadistic or violent); United States v. Garrett, 190 F.3d 1220, 1224 (11th Cir. 1999) (noting that a photograph is sadistic when it depicts the subjection of a young child to sexual acts that would have to be painful, including vaginal or anal penetration by adult males).

Among the defendant's thousands of images of child pornography are multiple images depicting violence against children, including multiple images of an adult male penetrating a crying prepubescent female child, multiple images of an infant being penetrated by an adult male, and images of a young child with marks from apparently being struck on her buttocks by what appears to be a riding crop. The defendant's contention that these images do not depict acts of violence is simply untenable. Accordingly, the enhancement for possession of images depicting sadistic, masochistic, or violent conduct pursuant to U.S.S.G. § 2G2.2(b)(4) is properly applied in this case.

### C.    The Effect of *Booker* and *Fan Fan*.

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531

(2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to review by the Court of Appeals for "reasonableness." Id. at 769. Accordingly, in the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., id. at 767 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing

Act was to move the sentencing system in the direction of increased uniformity.");
id. at 743 (same) ("Congress' basic statutory goal -- a system that diminishes
sentencing disparity -- depends for its success upon judicial efforts to determine,
and to base punishment upon, the real conduct that underlies the crime of
conviction."); id. at 759 (dissenting opinion of Stevens, J.) ("The elimination of
sentencing disparity, which Congress determined was chiefly the result of a
discretionary sentencing regime, was unquestionably Congress' principal aim.");
id. at 783 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was
to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of
like crimes, represent the distillation of 15 years of careful study of sentencing
practices across the country, and correlate as well to the varying severity of crimes
as defined by Congress.  The Guidelines, consisting of offense characteristics and
various grounds for departure, also address all of the considerations relevant to
sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and
circumstances of the offense and the history and characteristics of the defendant;"
"the need for the sentence imposed -- (A) to reflect the seriousness of the offense,
to promote respect for the law, and to provide just punishment for the offense; (B)
to afford adequate deterrence to criminal conduct; (C) to protect the public from

further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances.

Accordingly, a sentence within the Guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The United States anticipates that only sentences outside the Guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In this case no unusual circumstances exist which warrant an exception to the preference for Guideline sentencing. Therefore, the United States respectfully recommends that the Court sentence the defendant to a term of imprisonment of 100 months, which is a term of imprisonment within the Guidelines range of 87 to 108 months.

### III.   APPLICATION OF 18 U.S.C. § 3553(a) SENTENCING FACTORS

In addition to the Guidelines, as previously noted, <u>Booker</u> makes clear that the Court must also consider the sentencing factors set for in 18 U.S.C. § 3553(a). 125 S. Ct. at 767. The Section 3553(a) sentencing factors include:  (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established Guidelines sentencing ranges; (5) any pertinent Guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense.  18 U.S.C. § 3553(a)(1) through (7).  Each sentencing factor is addressed in turn:

### A.   <u>Nature and Circumstances of Offense and the History and Characteristics of the Defendant.</u>

The nature and circumstances of the defendant's offense and the defendant's history and characteristics strongly support imposition a sentence within the range of 87 to 108 months of imprisonment.  The nature and circumstances of the offenses are detailed in the Plea Agreement, in the discussions

above, and in the PSR.  The defendant's criminal history and characteristics are
also detailed in the PSR and similarly support imposition of a sentence within the
range of 87 to 108 months of imprisonment.

**B.**     **Need for the Sentence to Reflect the Seriousness of the Offense,
Afford Deterrence, Protect the Public, and Rehabilitate the
Defendant.**

The need to appropriately reflect the seriousness the defendant's offense,
afford appropriate deterrence, protect the public, and afford the defendant
appropriate rehabilitation similarly dictate that a sentence of imprisonment in the
range of 87 to 108 months is appropriate.

First, the defendant's offense unquestionably was extremely serious,
particularly when considered context with the defendant's apparent insatiable
desire to collect child pornography even after the police had searched his residence
and seized multiple computers containing child pornography.  Second, a sentence
in the range of 87 to 108 months imprisonment is critical to deter the defendant's
conduct.  A sentence of imprisonment within the range contemplated by the
Guidelines will protect the public from the defendant's criminal activity.  When
viewed against the defendant's past conduct, a sentence in the range of 87 to 108
months imprisonment will have no impact on the defendant's prospect for
education and training.

**C.** **Kinds of Sentences Available.**

The only sentence available and appropriate for the defendant's offense is a combination of confinement, a fine, and supervised release.

**D.** **Sentencing Ranges Available.**

The United States' position with regard to an appropriate Guidelines sentence is detailed above.

**E.** **Pertinent Policy Statements.**

The United States is unaware of any pertinent policy statement that suggests a range of imprisonment any less than a range of 87 to 108 months.

**F.** **Need to Avoid Sentence Disparity.**

A sentence of imprisonment of 87 to 108 months is consistent with the sentencing range suggested by the Sentencing Guidelines for other similarly situated defendants.

**G.** **Restitution.**

The United States leaves the question of appropriate restitution to the sound discretion of the Court.

## IV.     SENTENCING RECOMMENDATION

Based on the foregoing, the United States recommends a sentence of

imprisonment of 100 months, 3 years of supervised release, a $15,000 fine and a

$100 special assessment.  The United States leaves the issues of restitution to the

sound discretion of the Court.

RESPECTFULLY SUBMITTED this 2nd day of May, 2006, at Anchorage,

Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
>  s/ James A. Goeke
> Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 222 West 7th Ave., #9, Rm. 253
> Anchorage, AK 99513-7567
> Phone: (907) 271-5071
> Fax: (907) 271-1500
> Email: james.goeke@usdoj.gov