```
            IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,)
                         )
         Plaintiff,      )
                         )
     vs.                 )
                         )
TOMMY HANSON             )
                         )
                         )
         Defendant.      ) CASE NO:5:05-cr-03-(JWS)
                         )
_____)
```

**MEMORANDUM IN SUPPORT OF**
**MOTION TO WITHDRAW PLEA**

Hugh W. Fleischer, as attorney for defendant, Tommy Hanson, in the above captioned action, has filed a Motion to Withdraw the Plea of guilty and withdraw from the terms and conditions of the oral Plea Agreement made on December 12, 2005.

Undersigned counsel has carefully interviewed Mr. Hanson as well as reviewed a CD of the plea agreement, the Presentence Report, reviewed hundreds of images at the U.S. Customs office and reviewed other supporting material.

**1. Factual and Procedural Background**

On May 23, 2005, Mr. Hanson and his then counsel Assistant Federal Public Defender Michael Dieni, appeared before Magistrate Judge Phillip M.

Pallenberg, who arraigned Mr. Hanson for trial on the possession of child pornography charges set out in the Indictment, which was entered on April 19, 2005.  Mr. Hanson was detained.

Subsequently, on November 15, 2005, the government obtained a three-count superceding indictment in the case of United States v. Tommy Hanson, charging Mr. Hanson with possession of child pornography and receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); 2252(a)(4)(B) and (b)(2); and 2252A(a)(2)(A) and (b)(1).  On November 21, 2005 Hanson appeared before magistrate Judge with his attorney, Mr. Dieni, and entered a plea of not guilty.

According to the superceding indictment and the discovery produced by the government, Mr. Hanson's alleged offense conduct consisted, essentially, in his possessing a home built computer with a hard drive and four computer discs containing images that "is or is indistinguishable from that of a minor engaging in sexually explicit conduct." (18 USC § 2256(8)((B)), that had been transported in interstate or foreign commerce [Count 1]: that he possessed  computer hard drive(s), computer disc(s) and computer media containing the actual images of

children, who could be specifically identified, engaged in sexually explicit conduct, in interstate or foreign commerce [Count 2]; and the receipt of digital images, computer images and computer-generated images of containing images that "is or is indistinguishable from that of a minor engaging in sexually explicit conduct." (18 USC § 2256(8)((B)) However, it was clear from the government that the purported proof under the last Count would have been different images from those in Counts 1 or 2, and had been transported in interstate or foreign commerce [Count 3]. The government is represented, in this case, by First Assistant U.S. Attorney James Goeke.

On December 12, 2005, when trial was scheduled, Hanson, through his attorney, Michael Dieni, AFPD, negotiated a plea agreement with the government that dealt with the entire case. Such plea was entered into after a brief recess, which included negotiations between the parties, after the Court had dismissed Counts 1 and 3.

Mr. Hanson faced a total of three felony charges in the indictment. The oral plea agreement allowed him to reduce his exposure to imprisonment and other punishment by pleading guilty to one

Count, Count 2, the other two Counts having been ruled unconstitutional by the Court under ***Ashforth v. Free Speech Coalition***, 535 U.S. 234, 122 S. Ct. 1389 (2002). The plea agreement took notice of the fact that the Court would base the sentence that Hanson might face, under the applicable statute, as well as 18 USC § 3553 and the advisory U.S. Sentencing Guidelines.  The oral plea agreement also contains oral representations by both Hanson and his attorney, Mr. Dieni.  For his part, Mr. Hanson acknowledged that he (1) wished to enter into the plea agreement, (2) had discussed the charges and the consequences of his plea with his attorney, (3) understood the rights he was giving up by pleading guilty and (4) "knowingly and voluntarily" was changing his plea.

Mr. Hanson also related that Mr. Dieni had discussed with Mr. Hanson the terms of the plea agreement, fully explained the charges to which he was pleading guilty, the elements of the offenses, "all possible defenses" and the consequences of his plea.  The plea agreement was assented to by Hanson and Dieni and by government counsel on December 12, 2005, in the presence of this Court. In response to questions from the Court, Hanson provided

information about his education and employment. He denied any history of substance abuse, and while acknowledging that he had, several years prior to the date of inquiry, seen a psychiatrist and received medications there from, he stated that such had been a temporary matter and the symptoms present during such care had not reappeared and that he was fully capable of understanding the then present hearing.

The Court then inquired of Hanson as to his understanding of the plea agreement and its consequences. Mr. Hanson represented that he had discussed both the indictment and the terms of the oral plea agreement with Mr. Dieni, that he understood the terms and potential consequences of the plea agreement and that he was satisfied with Dieni's services as his attorney. After orally reviewing the terms of the plea agreement, the Court asked Hanson whether he had any questions or concerns about the plea agreement, and he said "no."

Government counsel James Goeke laid out the government's case-in-chief. The Court inquired of Hanson whether the allegations were true, and he replied "yes." Hanson plead guilty to Count 2 of

the First Superseding Indictment, the Court accepted his plea and adjudged him guilty on that count.

The Court then ordered preparation of a Presentence Report (PSR) and set the date for an imposition of sentence on February 27, 2006.

Subsequently, however, Hanson notified the Court that he wished to have Mr. Dieni withdraw as his attorney and for substitute counsel to be appointed. The Court granted the request for the withdrawal and substitution of counsel. The undersigned CJA counsel was appointed by the Federal Public Defender's office on or about June 22, 2006.

On October 31, 2006 (Docket 122), this Court ordered that any motion to withdraw such pleas be filed on or before December 4, 2006.

**2. Defendant's Grounds To Withdraw His Pleas**

Mr. Hanson's grounds for withdrawing his pleas of guilty are set out in his attached affidavit. They are:

(1) he did not receive effective assistance of counsel prior to changing his plea;

(2) the failure to provide him with reasonable advice regarding the guideline enhancement of possession of child pornography that "portrays

sadism or masochism or other depictions of violence, increase by 4 levels." U.S.S.G. § 2G2.2 (b) (4)

(3) Mr. Dieni did not fully explain the ramifications of relevant conduct to Mr. Hanson, which, in part, led to the Probation Office Presentence Report to include, under § 34, a Specific Offense Characteristic that added five levels for 600 or more images under U.S.S. G. § 2G2.2 (b) (7) (D), obviously looking well beyond the bounds of Count 2, which would have provided only a two level increase for at least 10 images but fewer than 150.

(5) Mr. Hanson did accept responsibility. Mr. Dieni should have worked to obtain the extra point of reduction.

It was not until Mr. Hanson received the Draft Presentence Report that he realized that the government was going to propose a sentence of, *inter alia*, 87 to 108 months.

### a.  The Law of Plea Withdrawal

As stated in his motion, it is filed pursuant to Rule 11(d)(2)(d) of the Federal Rules of Criminal Procedure.

Such Rule states in pertinent part:

7

> **(d) Plea Withdrawal.** If a motion to withdraw a plea of guilty or nolo contender is made before sentence is imposed, the court may permit the plea to be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal."

The Court may allow a defendant to withdraw his guilty plea prior to sentencing "if the defendant shows any fair and just reason." ***United States v. Hyde***, 520 U.S. 670, 671, 117 S. Ct. 1630, 137 L.Ed.2d 935 (1997) (Guilty pleas can be accepted while pleas agreements are deferred, and the acceptance of the two can be separated in time). "A defendant has no right to withdraw his guilty plea, rather, the decision to allow withdrawal is within the sound discretion of the district court." ***United States v. Alber***, 56 F.3d 1106, 1111 (9th Cir. 1995). In ***United States v. Davis***, 428 F.3d 802, 805 (9th Cir. 2005, the most recent Ninth Circuit case regarding plea withdrawals, the Court said:

> The defendant has the burden of demonstrating a fair and just reason for withdrawal of a plea, see Rule 11(d)(2)(B): however, the standard is applied liberally.  See ***United States v. Garcia***, 376 F.3d 879, 883 (9th Cir. 2004; ***United States v. Nagra***, 147 F.3d 875, 880 (9th Cir. 1998 see  also ***United States v. Signori***, 844 F.2d 635,  637 (9th Cir. 1988)(stating that a motion to withdraw a plea pre-sentence should be "freely allowed"). 'Fair and just reasons for  withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, *or any other reason*

>   *for withdrawing the plea that did not exist when the defendant entered his plea.*' ***U.S. v. Ortega-Ascanio***, 376 F.3d @ 883 (emphasis added).

After sentence has been imposed, the plea may be set aside only on appeal or by motion under 28 U.S.C. § 2255. ***United States v. Baker***, 790 F. 2d 1437, 1438 (9th Cir. 1986). The denial of a motion to withdraw a guilty plea prior to sentencing is reviewed for an abuse of discretion. ***United States v. Nagra***, 147 F. 3d 875, 880 (9th Cir. 1998).

### b.   Ineffective Assistance of Counsel

Mr. Hanson asserts that Mr. Dieni failed to meet his responsibility under the Sixth Amendment to the U.S. Constitution, in that (1) he did not receive effective assistance of counsel prior to changing his plea; (2) The trial counsel's failure to provide him with reasonable advice regarding the guideline enhancement of possession of child pornography that "portrays sadism or masochism or other depictions of violence, increase by 4 levels." U.S.S.G. § 2G2.2(b)(4); (3) Mr. Dieni did not fully explain the ramifications of relevant conduct, to Mr. Hanson, which, in part, led to the Probation Office Presentence Report to include, under § 34, a Specific Offense Characteristic that added five

levels for 600 or more images under U.S.S. G. § 2G2.2(b)(7)(D). (4) Mr. Dieni failed to obtain the extra point under the Acceptance of Responsibility guideline.

The restrictions of imprisonment did not allow him to investigate the information that he received from Mr. Dieni, even after the plea, including, but not limited to, the sadism enhancement, which led to a four level enhancement and the relevant conduct that led, in part, to the five level enhancement, when he reasonably expected a mere two level increase.

In **McMann v. Richardson**, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970), the U.S. Supreme Court declared that "the right to counsel is the right to the effective assistance of counsel." Cited in **Jennings v. Woodford**, 290 F. 3rd 1006, 1012 (9th Cir. 2002).

In **Strickland v. Washington**, the Supreme Court formulated a two prong test.  A defendant claiming ineffective assistance of counsel must demonstrate (1) that his attorney's representation "fell below an objective standard of reasonableness," (the "performance prong") and (2) the attorney's deficient performance prejudiced the defendant such

10

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (the "prejudice prong") *Strickland*, 466 U.S. @ 688. 694, 104 S. Ct. 2052.

*Strickland's* two-prong test applies to ineffectiveness claims arising from the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57-58, 106 S. Ct. 366, 88 L.Ed.2d 203 (1885) (holding that voluntariness of a guilty plea depends on the adequacy of counsel's legal advice).

In the case at bar, Hanson avers in his affidavit that his attorney failed to advise him that the sadism and masochistic enhancement did apply to him, that, moreover, that his counsel did not explain relevant conduct to him so that he was led to believe that his sentence would be based upon the perimeters of Count 2 and that Dieni failed to obtain the extra point of reduction under the acceptance of responsibility guideline.

   c. <u>**The Sadism and Masochistic Enhancement, the Failure to Advise of Relevant Conduct and Acceptance of Responsibility**</u>

Mr. Dieni advised Mr. Hanson that he did not believe that the said enhancement would apply, as he had found no cases on point, in the Ninth

Circuit. However, there was a Ninth Circuit precedent prior to the change of plea. The case of ***U.S. v. Rearden***, 349 F. 3d 608 (9th Cir. 2003), held that the trial court had not erred in giving the defendant the enhancement for sadistic or masochistic or other depictions of violence. The case involved a conviction for a violation of 18 U.S.C. § 2252A(a)(1) by shipping child pornography over the internet. In addition, Mr. Dieni was unaware of cases regarding such enhancement from other Circuits, as he acknowledged in his Affidavit. (Dkt. 104) As a result of these errors, Mr. Dieni advised Mr. Hanson that "he would have a very good chance to defeat the four level enhancement." (Dkt 104).

    In regard to relevant conduct being a partial basis for Mr. Hanson's sentence, Mr. Hanson swore that he understood, prior to the plea that he would only be charged with the evidence under Count 2. Admittedly, there was only a brief time to go over the proposed change of plea that occurred during a brief recess before the Court reconvened. It is understood that Mr. Dieni is fully familiar with the use of "relevant conduct" in Presentence Reports and in sentencing. Yet, in

Mr. Dieni's Affidavit, he states, "Mr. Hanson's recollection is that he assumed that the government's dismissal of Count 1 and Count 3 would mean that the government would not use the contents of those count as a basis for his sentence." (Dkt. 104)  This quote suggests that had this assumption been incorrect, Mr. Dieni would have disabused Mr. Hanson of that notion. Indeed, Mr. Hanson states in his Affidavit that he told Mr. Dieni that he understood his punishment would be based upon only Count 2 and that Mr. Dieni did not contradict him or otherwise advise, prior to the plea, that other information would be used against Hanson.

　　The last point is that Mr. Hanson charges that Mr. Dieni did not properly represent Hanson in the acceptance of responsibility.  The government did not file a motion under U.S.S.G. § 3E1.1(b), which does require such a motion to acquire the additional point and the guideline provision states, *inter alia:*

> …upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently…

The above attorney errors clearly fall within both prongs of **Strickland**. The attorney's representation "fell below an objective standard of reasonableness", in that, by Mr. Dieni's own admission, he had not known of the Ninth Circuit case of **Rearden** nor the other Circuit cases which dealt with the sadism enhancement. Mr. Dieni told Mr. Hanson that he had a "very good chance to defeat the four level enhancement." That error, in and of itself, resulted in serious prejudice to Mr. Hanson, amounting to the difference between 57-71 months versus 87-108 months-a two and on-half years of difference in sentence.

The relevant conduct matter is less clear than the former subject, but is referenced in Mr. Dieni's Affidavit. Mr. Hanson definitely believed that he would only be charged with evidence under Count 2, when he went into the change of plea hearing. Even though the time was tight and things were happening very fast, it was incumbent on Mr. Dieni to make it clear to Mr. Hanson that the government would be able to use relevant conduct and all that such means in the sentence. It can reasonably be assumed that Dieni did not do so or presumably, he would have said so in his

14

affidavit, where he referred to "Mr. Hanson's recollection is that he assumed that the government's dismissal of Counts 1 and 3 would mean that the government would not use the contents of those counts as a basis for the sentence." Therefore, the Court should accept the Affidavit of Mr. Hanson, which shows that he was not properly advised about relevant conduct. The prejudice to Mr. Hanson by this error would have resulted in the difference, along with the enhancement determination, is between 41-51 months as compared with 87-108 months, a difference of three years and eight months.

As to the most minor of assertions, Mr. Hanson believes that Mr. Dieni could and should have made a strong case for a full three point reduction for acceptance of responsibility. As a result, Mr. Hanson received only a two point reduction. The prejudice to Mr. Hanson from this error was one level, which, in conjunction with the other two determinations, would have put him at level 21, for a sentence of 37-46, a difference of four years and two months.

3.      **Conclusion**

The effect of ineffective assistance of counsel coupled with the obvious seriousness of those items not provided to Mr. Hanson until after his change of plea rendered Mr. Hanson unable to knowingly and voluntarily change his plea.  He submits that he has fair and just reasons to withdraw his pleas.  His motion to withdraw his plea should be granted, and his case ordered submitted for trial.

DATED at Anchorage, Alaska, this 1st day of December, 2006.

                LAW OFFICES OF HUGH W. FLEISCHER

                By: S/ Hugh W. Fleischer
                Hugh W. Fleischer
                Attorney for Defendant
                310 K. St., Suite 200
                Anchorage, AK 99501
                907-264-6635
                907-264-6602-Fax
                hfleisch@aol.com

9525\508